THERESA GASTER, PLAINTIFF IN ERROR, V. FRANK W. WELNA, DEFENDANT IN ERROR.

**Trespass:** POSSESSORY RIGHT INSUFFICIENT TO MAINTAIN. T. G., in 1881, entered upon a certain forty acre tract of land cornering with her farm, which land had been patented to David McConaghy in 1869, upon an entry thereof made many years before, and which she, T. G., had purchased at tax sale, for delinquent taxes. She erected a fence on said land, which, with her fence on her own land, which cornered with said forty acre tract, and the Elkhorn river on one side, enclosed a part of said land, which enclosure she used as a pasture for stock from 1881 to the day of the alleged trespass. On the 15th day of June, 1885, F. W. W., having received a deed of said forty acre tract of land from the grantee of said patentee, went upon said land, notified T. G. to remove her stock therefrom, which she refused to do. He, on the same day, commenced the erection of a wire fence, which, with the other fences and the river aforesaid, enclosed the whole of said land, including the parts thereof enclosed by the fence of T. G. On the day following, F. W. W. finished his fence, and just before its completion drove the stock of T. G. through said fence and off of the land (except one horse which was *lariated* on the land). T. G. almost immediately, and on the same day, broke down the said wire fence and drove her stock back on the land. In an action of trespass by F. W. W. against T. G. for breaking the fence and returning her stock to said land, *Held*, That F. W. W. was not in such possession of the land as to authorize him to maintain the action.

ERROR to the district court for Cuming county. Tried below before CRAWFORD, J.

*Uriah Bruner,* for plaintiff in error, cited: Maxwell's Pl. and Pr., 101, 102. *Yorgensen v. Yorgensen,* 6 Neb., 383. Abbott Trial Ev., 634. *Bakersfield Cong. Society v. Baker,* 15 Vermont, 119. *Polk v. Henderson,* 9 Yerg., 310. 6 Wait's Actions and Defenses, 64.

*M. McLaughlin,* for defendant in error, cited: *O'Brien v. Cavanaugh,* 28 N. W. R., 127. *Fort Dearborn Lodge v.*

*Kline,* 3 N. E. R., 272.    Hilliard Torts, 209.    *Davis v. Mason,* 4 Pick., 156.

COBB, J.

This was an action of trespass commenced before a justice of the peace by Frank W. Welna against Theresa Gaster.    Judgment was rendered for the defendant by the justice, and thereupon the plaintiff took an appeal to the district court.    In the latter court the plaintiff filed his petition, alleging :

1.    That " on the 16th day of June, 1885, and on divers other days between that time and the commencement of said suit, the defendant unlawfully, and with force and arms, broke and entered upon the plaintiff's land, to-wit, the N. W. ¼ of the N. E. ¼ of section 17, in township 22, range 6 east, situate in Cuming county, Nebraska, and then and there with horses, cattle, and hogs, trod down, ate up, and destroyed twenty acres of grass growing thereon, and belonging to the plaintiff, of the value of $10.00, and converted the same to her use.

"2.    The defendant, while so unlawfully upon the plaintiff's land, did, unlawfully and with force, cut, break, and destroy 20 feet of wire fence, the property of the plaintiff, being then upon said land, of the value of $5.00.

"3.    The plaintiff has been damaged by the said unlawful and wrongful acts of the defendant, in the sum of $15.00."    With prayer for judgment.

The defendant answered said petition as follows :

1.    She " denies that the plaintiff is the owner of the premises in the plaintiff's petition described, or that he ever was the owner thereof, and denies that he is entitled to the possession of said premises, and denies that he was entitled to the possession thereof on the 16th day of June, 1885, or at any other time.

"2.    She alleges that she is the owner of the said prem-

ises, and entitled to the possession thereof, by reason of the following statement of facts, and was the owner thereof prior to June 16, 1885, and continued to be such owner to the present time; that on the 12th day of February, 1875, she purchased said land at private sale from the county treasurer of Cuming county, Nebraska, at the county treasurer's office of said county, for the delinquent and unpaid taxes that had been assessed against and levied upon said premises for the year 1872, and obtained a certificate of the tax sale therefor; that as the holder and owner of said certificate of tax sale she claimed to be the owner of said premises, and as such owner, in February, 1875, she entered into possession of the said premises, with the intention of occupying the same as her own, and in hostility and adversely to the person who claimed to hold the patent from the United States therefor, and in hostility and adversely to all the world; that as such owner she has been in the open, notorious, uninterrupted, and exclusive adverse possession of said premises ever since February, 1875, continuously to the present time, and has paid all of the taxes that were ever assessed against said premises prior to 1873, to-wit, for 1869, 1870, and 1871; that on February 12, 1873, the person who at the time claimed to be the owner of said premises under said patent from the United States, when the defendant purchased said premises at tax sale, as aforesaid, abandoned the same and all claim to said land, and that said defendant's possession of said premises as aforesaid, ever since February, 1875, had been adverse and hostile to the person who claimed patent from the United States, under whom said plaintiff claims to have title thereto; and ever since then, to-wit, since February, 1875, her possession of said premises as aforesaid has been adverse and hostile to all the world, and said premises have been entered upon by her in February, 1875;    *    *    *    that defendant made valuable and permanent improvements on said prem-

ises, which said improvements were made in May, 1875, and other and valuable improvements were made thereon by said defendant, as such owner, each year from that to the present time.

"3. And further, that she obtained a tax deed from the treasurer of Cuming county for said premises on October 29, 1881, and filed the same for record in the county clerk's office of said county, and the same was duly recorded; which said tax deed is color of title under which this defendant is entitled to the possession of said premises, and has been entitled to the possession thereof ever since the date thereof to the present time," etc.

The plaintiff replied, denying each and every allegation of said answer.

There was a trial to the court, a jury having been waived by the parties, with findings for the plaintiff, and the defendant's motion for a new trial having been overruled, judgment was rendered for the plaintiff in the sum of eight dollars and costs.

The defendant brings the cause to this court on error, and assigns twelve grounds of error, but which, with my views of the case, it is not deemed necessary to set out.

According to the plaintiff's testimony, he obtained his title to the said land on the 4th day of April, 18575, and recorded his deed therefor on the 10th day of the same month. His deed, with the patent to David McConaghy, and a deed from David McConaghy to James Bennett, plaintiff's grantor, all of which were put in evidence, established plaintiff's claim of title from the United States.

Plaintiff testified on the stand, as a witness in his own behalf, that, at or about the time of his obtaining the title to the land, he knew that defendant had been trespassing (to use his own language) on the said land by "keeping stock there, and horses and so forth." On the 15th day of June he notified her to keep her stock from trespassing on the land; on the 16th he run a fence along one line of

the land, which, with defendant's enclosure on one side, that of another party on another side, and the river on a third side, enclosed the land. At this time defendant's stock were on the land. After plaintiff had nearly finished the said fence, he drove the defendant's stock (with the exception of a horse which was lariated on the land) off, and finished the said fence. The defendant, almost immediately, and before the plaintiff had left the premises, broke down the fence and returned her cattle to the land. This is the trespass for which the action was brought.

It appears from the testimony of the plaintiff upon his cross-examination, that, at the time he built the fence which was torn down by the defendant, she had a "catacornered" fence on the land, which, with other fences on adjoining land, and the river on one side, enclosed a part of the land in question, and had her stock on the land so enclosed. While, though he did not so state directly, it is fairly inferable from what he did say, that, in order to get her stock off of the land, as he did, he tore down or removed a part of her "catacornered fence."

It appears from the testimony of Daniel Murry, a witness on the part of the plaintiff, and who assisted him in turning the defendant's cattle off of the land and in putting up the fence, that defendant's stock were in her small enclosure on the land, when he and plaintiff put up the fence nearly to completion. He does not say that they tore down the defendant's fence around her small pasture or enclosure on the land, in order to remove her stock, but it is clearly and necessarily inferable from what he does say. Neither the plaintiff nor the witness state with any certainty the length of time that intervened between the turning of defendant's stock out of her enclosure and through the fence erected by them, and the breaking down of the fence and the return of her stock by the defendant. Witness states, on his cross-examination, that it took him and the plaintiff nearly two days to put up the fence.

They both say that they commenced on the fifteenth, and plaintiff states in his evidence that just before they finished the enclosure they drove the defendant's stock through and off the land. All agree that the supposed trespass was committed on the 16th day of the month, and while both plaintiff and the witness, his hired man, were then present on the premises.

It was proven in evidence on the part of the defendant, and indeed it is undisputed, that on the 12th day of February, 1875, she purchased the land from the treasurer of said county at a private sale for delinquent taxes, and that she immediately set up a claim to the exclusive right to depasture said land, by virtue of her tax certificate. Defendant testified that she immediately entered into possession of the land, ploughed fire lines around it, and built a wire fence on it from one corner to the other.

She obtained a tax deed on her said purchase of said land on the 11th day of March, 1880, which was recorded on the 4th day of November, 1881. Her testimony is positive and undisputed that, from some time in 1881 to the day of the supposed trespass, she had that part of said tract of land enclosed by so much fence as was necessary to make it an entire enclosure; had the exclusive use and possession of that part of the land which was enclosed during the whole of each pasturing season, from 1881 to 1885, inclusive, claiming title under her said tax deed.

From and after the 11th day of March, 1880, the date of her tax deed, the defendant had color of title to the land, however insufficient the said deed might be to convey the real title, which would relieve her occupation thereof of the quality of a trespass. But had she entered thereon on that day as a mere trespasser, or on any subsequent day prior to the 16th of June, 1881, the right of action of the real owner for such trespass would have been barred by the statute of limitations at the date of the plaintiff's attempted entry.

It may, therefore, for the purposes of this opinion, be conceded that the defendant does not show herself to have been in the actual, exclusive, adverse possession of the land for ten years, so as to give her a title thereto; yet her possession was not that of a trespasser. It may also be conceded, for the same purpose, that the plaintiff, as the holder of the legal title, had he been able to obtain the quiet, peaceable, and full possession of the land, had the right to do so, and thus drive the defendant to an action for her rights therein. But it appears, from all the evidence in the case, especially from his own testimony, that this he was unable to do. He found the defendant in possession, and endeavored to dispossess her. In the first engagement he obtained some temporary advantage, and even a measure of success. But the defendant soon rallied, and regained her ground, so that long before the close of the day the parties stood *in statu quo*. That which the defendant did to hold her possession of the land was in resistance of the plaintiff's attempt to dispossess her by force, and does not furnish the ground of an action of trespass against her.

In the case of *Bakersfield Cong. Soc. v. Baker et al.*, 15 Vt., 119, cited by counsel for plaintiff in error, it was held that, "To maintain this action," trespass *quare clausum fregit*, "it is necessary that the plaintiff should have either the exclusive possession of the *locus in quo*, or be the owner thereof, and no adverse possession in any other person."

In the case of *Polk v. Henderson*, 17 Tenn. R. (9 Yerg.), 310, also cited by counsel, the trial court charged the jury, " That either the possession or the right to the possession would authorize the maintenance of the action." The action was trespass *quare clausum fregit*. The supreme court, in the opinion reversing the judgment for error, in said instruction, say: " This," the instruction, "is clearly erroneous; the right to the possession and the right of entry are synonymous terms, and authorize the bringing of an action of ejectment, but not an action of trespass. It is

possible that by the right of possession the court meant constructive possession, but they are very different in their signification. * * * The court should have charged the jury that a constructive possession would authorize the maintenance of this action against a casual trespasser, where there was no person in the adverse possession of the disputed premises, but that the action could not be supported under any other circumstances, unless the plaintiff were in the actual possession at the time when the injury was committed."

The principle laid down in these cases is the law, as we understand it, and, I think, quite applicable to the case at bar.

The claims of the defendant to the title of said land by adverse possession, under her tax certificate and deed, as urged in the pleading and in the brief of her counsel, is not considered.

The judgment of the district court is reversed, and the cause remanded to that court, with instructions to dismiss the action at the costs of the plaintiff.

JUDGMENT ACCORDINGLY.

THE other judges concur.